IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | } } } |
| Plaintiff, | } CIVIL ACTION NO. } 3:05–CV-1928M } |
| v. | } } |
| BOBRICH ENTERPRISES d/b/a SUBWAY | } } } |
| Defendant. | } |

## PLAINTIFF'S OBJECTIONS TO EXHIBITS, MOTION IN LIMINE AND BRIEF IN SUPPORT THEREOF

COMES NOW the Plaintiff Equal Employment Opportunity Commission (hereafter the "Commission" or "EEOC") and files this Objection to Exhibits, Motion in Limine and Brief in Support Thereof.

The EEOC requests that the parties, counsel for the parties, and, through counsel, any and all witnesses be instructed to refrain from asking about or mentioning, directly or indirectly, any of the exhibits, deposition testimony, live testimony or other matters contained in EEOC's Motion in Limine and Brief. Specifically, the EEOC objects to the following:

(1) Defendant's Exhibit 3
Any mention of or reference to Tammy Gitsham's resume and the hand-written notes on her resume that are hearsay and cannot be authenticated;

(2) Defendant's Exhibits 10, 11, 12 and Defendant Exhibit 2
Any mention of or reference to whether Tammy Gitsham has ever been arrested, charged, convicted and/or incarcerated for any crime; or mention of or reference to whether Ms. Gitsham has ever been known by any of the following names:

Frankie Harrison, Frankie Mae Harrison, Frankie Marie Harrison, and/or Rachell Michell Harrison;

(3)　Defendant's Exhibit 15

(4)　Defendant's Exhibit 20

(5)　Defendant's Exhibit 21

(6)　Defendant's Exhibit 23

(7)　Any mention of or reference to Ms. Gitsham's marital problems or divorce history;

(8)　Any testimony from Judy Peterson, Rodney Mahaffey or any other witnesses relating to any drug or alcohol use by Ms. Gitsham outside of the workplace.

(9)　Any mention of or reference to whether the EEOC properly investigated the charge of discrimination at issue in this case or attempted to eliminate the discriminatory practices alleged through informal methods of conciliation, conference and persuasion prior to filing this litigation as required by Section 706(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-5(b);

(10)　Defendant's offer of any testimony or reference to other statements by any person other than the individuals who have been properly identified by the Defendant in answer to EEOC interrogatories or in supplemental answers thereto as persons having knowledge of relevant facts. *See* Fed. R. Civ. P. 26(e)(1)(A);

(11)　Defendant's offer of any evidence or testimony to prove the affirmative defenses identified in the cases of *Burlington Industries v. Ellerth*, 118 S.Ct. 2257, 2270 (1998); *Faragher v. City of Boca Raton*, 118 S.Ct. 2275 (1998).

The EEOC respectfully submits that the matters set out in this Motion in Limine are inadmissible for any purpose, are unduly prejudicial, and would be excluded from evidence on timely and proper objection.

## FACTUAL BACKGROUND

This is an employment discrimination case brought by the Plaintiff Equal Employment

Opportunity Commission under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. Section 12101 et. seq. on behalf of Tammy Gitsham.  The Commission alleges that the Defendant violated the ADA by subjecting Ms. Gitsham to harassment and a hostile work environment because of her disability, severe hearing impairment, and/or because Ms. Gitsham was regarded as disabled or because she has a record of a disability.  EEOC alleges that the unlawful harassment resulted in her constructive discharge from her position of Area Supervisor.

**Issue No. 1**
**DEFENDANT'S EXHIBIT 3**

The EEOC objects to the introduction at trial of Defendant's Exhibit 3 and seeks to exclude from the trial of this matter any testimony, evidence, and/or deposition testimony relating to the document.  Exhibit 3 appears to be a resume for Tammy S. Flatte.[1]  EEOC objects to the introduction of Defendant's Exhibit 3 because it is irrelevant to the claims and defenses in this lawsuit.   The admission or exclusion of evidence at trial is a matter committed to the discretion of the trial court.  *United States v. Moody*, 903 F.2d 321, 326 (5th Cir. 1990).  The trial court is given "wide latitude" in imposing reasonable restraints upon cross-examination of witnesses.  *Id.*

Defendant's Exhibit 3 and testimony relating to Exhibit 3 should be excluded from the trial of this matter.  Rule 401 of the Federal Rules of Evidence defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

---

[1] **Error! Main Document Only.** Ms. Gitsham has married and divorced during the years of her employment with the Defendant and since that time. She has been known as Tammy Flatte and Tammy Cataldi and is now Tammy Gitsham.

evidence." Defendant's Exhibit 3 does not support the existence of any fact of consequence in this disability harassment and constructive discharge case. The question initially to be asked is: What relevant fact does the evidence prove? This question must be answered prior to allowing admission of the evidence. 2 Weinstein's Evidence § 401.04[1], pg 401-14 (Matthew Bender 3/97) ("Where relevance is not immediately apparent, the judge and counsel should clearly identify how the evidence is relevant."). Ms. Cataldi's qualifications for the job are not relevant. Neither her work experience nor education is at issue in this case. The Defendant does not contend that Ms. Gitsham was fired because of poor job performance. In fact, it is the Defendant's contention that Ms. Gitsham resigned her position. The question in this case is whether the Defendant subjected Ms. Cataldi to a hostile work environment because of her disability and was she constructively discharged as a result.

Further, Defendant's Exhibit 3 cannot be authenticated. Through the discovery of this case, witnesses for the Defendant have been asked to identify the handwriting on Exhibit 3. BobRich owner Robert Suarez testified that he did not see Exhibit 3 until Ms. Gitsham's deposition; that the handwriting was not his and that he did not recognize any of the handwriting (Suarez deposition, page 98)(Deposition pages attached (in reverse alphabetical order) to this Motion as Attachment A.) The company's most senior Director of Operations Rodney Mahaffey testified that the handwriting on Exhibit 3 was not his handwriting; that none of the handwriting was his; that he could not identify whose writing it was. (Mahaffey deposition, pages 47, 48). Defendant's Human Resources manager Linda Clague testified that she did not remember seeing Exhibit 3, but that the handwriting was not her handwriting. (Clague deposition, page 22). She

4

also testified that she had no involvement in hiring Tammy Gitsham. Ms. Gitsham's direct supervisor Jim Schuster similarly testified that he was not involved in hiring Ms. Gitsham. (Schuster deposition, page 79). Therefore, the handwriting on this document cannot be authenticated. It is unknown whether the handwriting was put on the document at the time of Ms. Gitsham's hiring or at some other time. Given that the document is irrelevant to the claims and defenses at issue and that it cannot be authenticated, EEOC requests that Exhibit 3 and any testimony about this document be excluded from the trial of this matter.

Further, EEOC objects to any attempts by the Defendant to use evidence or testimony relating to Ms. Gitsham's resume under the "after acquired evidence" doctrine. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995). Noting that an employer "could not have been motivated by knowledge it did not have," the United States Supreme Court has made it clear that employers may not avoid liability for discriminatory actions by relying on after-acquired evidence of employee wrongdoing. *McKennon,* 513 U.S. at 358-360. EEOC objects to any attempt by the Defendant to rely on the after-acquired evidence affirmative defenses because Defendant has neither pled, nor set it out in any of its legal or factual issues, claims and contentions or witness summaries.

In the case at bar, any false statements Ms. Gitsham made in her employment application to Subway about her criminal history and work history were unknown to Defendant at the time she was constructively discharged in May 2003. Defendant made no reference to these statements before it deposed Ms. Gitsham in September 2006. Further, the testimony of Defendant's officials shows that the company would not have terminated Ms. Gitsham because

of this untruthfulness if it had been discovered during her employment. "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had know of it at the time of the discharge." *Id*. at 362-63. During their depositions, Robert Suarez, Rodney Mahaffey, Linda Clague and Jim Schuster all concurred that the company never terminated any employee because they lied on a resume. (Suarez deposition, page 102; Mahaffey deposition, page 58; Schuster deposition, page 101; Clague deposition, page 24).

It is expected that the Defendant wants to introduce Ms. Gitsham's resume for the purpose of attacking her credibility. During her deposition taken in this case, Ms. Gitsham admitted that she had included some information on her resume that was not correct – specifically the information relating to Michelle's Nook. Ms. Gitsham admitted during her deposition that this information was false, that she had never worked for Michelle's Nook. EEOC would object to this use of Exhibit 3 because of the low probative value of the information and its (intended) prejudicial effect. Federal Rule of Evidence 608(b) prohibits using extrinsic evidence to prove specific instances of conduct by a witness for the purpose of attacking a witness' credibility but does allow inquiries into specific instances of a witness's conduct for that purpose during cross-examination if probative of truthfulness or untruthfulness. *Fed. R. Evid. 608(b)*. Rule 607, FRE allows a witness to be impeached, but a witness may not be impeached on a collateral matter. "[I]t is well settled that it is not improper for the trial judge to limit impeachment on matters that are deemed collateral or irrelevant." *United States v. Walker,*

903 F.2d 789, 791 (10th Cir.1991). "A matter has been held to be collateral if it could not have been introduced in evidence for any purpose independent of impeachment." *Id. United States v. Beauchamp,* 986 F.2d 1, 4 (1st Cir.1993) ("A matter is considered collateral if `the matter itself is not relevant in the litigation to establish a fact or consequence, i.e., not relevant for a purpose other than mere contradiction of the in-court testimony of the witness.'" *quoting* 1 *McCormack on Evidence* § 45, at 169). Thus, "testimony [that] merely went to [the witness'] credibility by demonstrating a contradiction on an immaterial matter [i]s clearly excludible." *Id.* Any false statement Ms. Gitsham made many years ago on her resume is of limited probative value since it was Ms. Gitsham herself who volunteered the existence of those falsehoods during her deposition. (Gitsham Depo. pages 41, 42). Such candor about past mistakes indicates Ms. Gitsham's propensity to tell the truth, and admitting Exhibit 3 will only hinder the jury's ability to make unbiased fact determinations about the disability discrimination claim at hand.

The danger of unfair prejudice, as with the use of character evidence, is great. See Notes of the Advisory Committee to Rule 404(b):

> "Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question. . . It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." (Quoted in ***Lataille v. Ponte***, 754 F.2d 33, 35-36 (1st Cir.1985).)

**Issue No. 2**

**DEFENDANT'S EXHIBITS 10, 11, 12, 2
AND ALIASES USED BY TAMMY GITSHAM**

EEOC objects to the admission of Defendant's Exhibits 10, 11, 12 and 2 and seeks to exclude from the trial of this matter any testimony, evidence, and/or deposition testimony relating to whether Ms. Gitsham has ever been arrested, charged, convicted, and/or incarcerated for any crime and whether she has used an alias. Although criminal record evidence can be admitted for purposes of attacking the credibility of a witness, Tammy Gitsham's criminal record is not admissible because more than 10 years has elapsed since her last conviction and confinement. *Fed. R. Evid. 609(b)*. In fact, Exhibits 10 and 11 show convictions in 1977 and 1978 – almost 30 years ago.

The Federal Rules of Evidence does permit the Court to admit criminal record evidence, but only if the Court determines that the evidence's probative value "substantially outweighs" its prejudicial effect. *Id*. In this case, Ms. Gitsham's criminal record has scant probative value as to this case or to Ms. Gitsham's propensity to tell the truth. Her past criminal history, committed when she was in her early 20's bears no resemblance to who she is today – a 50-year-old woman, living and working in Lawton, Oklahoma. Having completed the judicial process on these criminal offenses, Ms. Gitsham has since committed herself to maintaining steady employment and to raising her two children (now successful adults). It is clear that Ms. Gitsham's life and values changed for the better long ago. What mentioning this criminal record will surely do is poison the minds of the jury against Ms. Gitsham's cause because of past mistakes that have absolutely no relation to the disability discrimination claim at bar.

EEOC also objects to any testimony relating to whether Ms. Gitsham has ever been known by any of the following names: Frankie Harrison, Frankie Mae Harrison, Frankie Marie Harrison, and/or Rachell Michell Harrison. Federal Rule of Evidence 608(b) prohibits using extrinsic evidence to prove specific instances of conduct by a witness for the purpose of attacking or supporting a witness's credibility but does allow inquiries into specific instances of a witness's conduct for that purpose during cross-examination **if probative of truthfulness or untruthfulness**. *Fed. R. Evid. 608(b).* During discovery in this case, Defendant produced pages from an internet website titled: PublicData.com that listed aliases for Ms. Gitsham. The pages from the internet in which Ms. Gitsham's aliases are mentioned have virtually no probative value as to her truthfulness or lack thereof. Indeed, they do not indicate when or under what circumstances Ms. Gitsham is supposed to have used the aliases listed. In addition to its lack of probative value, any evidence of Ms. Gitsham's use of these aliases is likely to unfairly prejudice her cause in the minds of the jury. *See Fed. R. Evid. 403*.

## Issue No. 3
## DEFENDANT'S EXHIBIT 15

EEOC objects to the admission of Defendant's Exhibit 15 and seeks to exclude this Exhibit from the trial of this matter. Defendant's Exhibit 15 is inadmissible heresay. Under the Federal Rules of Evidence, hearsay is generally inadmissible F.R.E. 802. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." F.R.E. 801.

Further, Defendant's Exhibit 15 cannot be authenticated. During the deposition of Judy Peterson, a current employee for Subway, she was shown Defendant's Exhibit 15. Ms. Peterson

testified that the signature on the page was her signature, but that she did not type or have typed the information above her signature.[2] She also testified that the information in Defendant's Exhibit 15 was not accurate. (Peterson deposition, pages 62-63). Ms. Peterson has been subpoenaed by the EEOC, she is available and is expected to testify live. The Defendant also can call Ms. Peterson to offer first-hand testimony about the incident described in Exhibit 15 without getting into hearsay problems or speculative testimony about how/when Exhibit 15 was created and what inaccuracies may be contained in Exhibit 15.

## Issue No. 4
## DEFENDANT'S EXHIBIT 20

EEOC objects to Defendant's Exhibit 20 because it contains handwriting at the bottom of the page that was not on the original document. The handwriting at the bottom of the page belongs to Ms. Gitsham and specifically references the EEOC investigator and the EEOC file. EEOC would agree to the admissibility of the same document without the handwriting, which EEOC has offered as Plaintiff's Exhibit 15. This document – without the handwriting – is the document that Jim Schuster authenticated during his deposition taken in the case.

## Issue No. 5
## DEFENDANT'S EXHIBIT 21

EEOC objects to Defendant's Exhibit 21 because it is irrelevant to the claims or defenses involved in this case. Exhibit 21 is a Sexual Harassment Policy. This case does not involve sexual harassment. This document is completely irelevant.

---

[2] Later in the deposition, Ms. Peterson also admitted that the telephone number, date of birth, social security number on the statement all were correct. (Peterson deposition, page 71)

## Issue No. 6
## DEFENDANT'S EXHIBIT 23

EEOC objects to Defendant's Exhibit 23 because the EEOC supplemented its Answers to Defendant's First Set of Written Interrogatories on November 21, 2006. In these supplemental answers, EEOC proffered a Corrected Answer to Interrogatory No. 15, which corrects an important error. EEOC would not object to admission of Defendant's Exhibit 23 if it also contained the November 2006 supplement.

## Issue No. 7
## MARITAL HISTORY OF MS. GITSHAM

EEOC seeks to exclude from the trial of this matter any testimony, evidence, and/or deposition testimony relating to the marital history of Ms. Gitsham and/or any marital problems that she has had. During the deposition of Ms. Gitsham, the Defendant spent an inordinate amount of time questioning Ms. Gitsham about her marriages to Mr. McCormick, Mr. Boyd, Mr. Cataldi. Ms. Gitsham has now been married four times. But that is not related in any way to this disability discrimination case. Any testimony relating to Ms. Gitsham's marriages, marital problems or divorces are inadmissible under F.R.E. 404. Rule 404 provides that specific incidents of conduct are not admissible to prove conduct in conformity therewith. Further, evidence of Ms. Gitsham's marital problems are inadmissible under Rule 608(b) to impeach a witness' truth or veracity. In *U.S. v. Stone*, 472 F.2d. 909, 916 (5th Cir. 1973), *cert. denied,* 449 U.S. 1020 (1973), the Fifth Circuit found that evidence of a witness' infidelity was inadmissible to impeach her truthfulness. The court determined that this evidence was inadmissible extrinsic evidence, under Rule 608(b) where it was wholly collateral to the issues of the case.

11

**PLAINTIFF'S OBJECTION TO EXHIBITS, MOTION IN LIMINE**
**AND BRIEF IN SUPPORT THEREOF**

Ms. Gitsham was married to Mr. Boyd approximately 30 years ago. This is long before she worked for Subway. She married Mr. Gitsham in May 2006 – long after her employment at Subway ended. EEOC objects to any testimony relating to the number of times Ms. Gitsham has been married, her failed marriages or her married names. Testimony on these marriages is simply not relevant and would waste the jury's time and perhaps confuse the jury or prejudice jurors against Ms. Gitsham.

## Issue No. 8
## DRUG OR ALCOHOL USE OF TAMMY GITSHAM

EEOC seeks to exclude from the trial of this matter any testimony, evidence, and/or deposition testimony relating to any allegations that Tammy Gitsham smoked marijuana, used other illegal drugs or used alcohol at any time outside of the workplace. Such allegations are irrelevant, they are based on hearsay testimony and/or idle speculation and are inadmissible for impeachment purposes.

EEOC specifically objects to the live or deposition testimony from Judy Peterson (Peterson deposition, pages 22-25), relating to her speculation that one time she thought Tammy Gitsham and Gail Massey were smoking marijuana. EEOC also specifically objects to testimony from Rodney Mahaffey regarding his speculation that he heard a voicemail that was recorded when he believed that Tammy Gitsham was in a bar. (Mahaffey deposition, pages 9-13).

It is well-settled that only relevant evidence is admissible at trial, while evidence that is not relevant is inadmissible. Fed. R. Evid. 402 (2001). Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the

12

action more probable or less probable than it would be without the evidence." Testimony relating to this issue is also inadmissible under Rule 608(b) to impeach a witness' truth or veracity. The Fifth Circuit has stated clearly that "drug use is not probative of truthfulness." *U.S. v. Williams*, 822 F.2d 512, 516-517 (5th Cir. 1987) *See also: United States v. Hastings*, 577 F.2d 38, 41-42 (8th Cir. 1978) ("illegal drug use or transactions, without more, do not show untruthfulness.")

In the instant case, any testimony that Ms. Gitsham and/or Ms. Massey allegedly smoked marijuana at places is irrelevant. Ms. Peterson testified that in fact she did not see Ms. Gitsham nor Ms. Massey smoking marijuana, instead, she claims that she smelled it and then saw them coming out of a back room of Ms. Gitsham's home. Such testimony is far too speculative to be probative in any way. Mr. Mahaffey's testimony appears even more speculative when he testified about hearing a voicemail conversation in which he overheard Tammy Gitsham talking to someone where there were "glasses clinking" and other "barroom noises" in the background. (Mahaffey deposition, pages 9-13). This testimony is simply too speculative to be reliable in any way. Given that Mahaffey believes the conversation he overheard was between Ms. Gitsham and another unidentified person, it also appears to be inadmissible hearsay. Further, any testimony relating to Ms. Gitsham (and other managers) having a margarita at a restaurant outside the workplace is also irrelevant. This evidence is clearly not probative of a single issue in this matter, where the Defendant has never alleged any drug or alcohol use contributed to Ms. Gitsham's harassment or constructive discharge. This is not a termination case where the

Defendant claims that Ms. Gitsham was fired for performance reasons. Therefore, any and all such reference to such allegations must be excluded as irrelevant.

## Issue No. 9
### EEOC'S INVESTIGATION AND CONCILIATION EFFORTS

The EEOC requests that this Court exclude from the trial of this matter any evidence, testimony and/or deposition testimony relating to any mention of or reference to whether the EEOC properly investigated the charge of discrimination at issue in this case or attempted to eliminate the discriminatory practices alleged through informal methods of conciliation, conference and persuasion prior to filing this litigation as required by Section 706(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-5(b). This request also covers efforts to conciliate and offers to compromise under Fed. R. Evid. 408. In the Joint Pretrial Order already filed in this case and in Defendant's Answer to Plaintiff's Complaint, Defendant did not deny that all conditions precedent to the institution of this lawsuit had been fulfilled.

The presentation of issues to this Court is a trial *de novo*. *See Smith v. Universal Services, Inc.*, 454 F.2d 154, 157 (5th Cir. 1972); *Georater Corp. v. EEOC*, 592 F.2d 765, 768 (4th Cir. 1979); *Olson v. Largo-Springhill Ltd. Partnership*, 919 F. Supp. 847 (D. Md. 1995). In this case, it is the jury and the trial judge who must find the facts and draw legal conclusions therefrom, independent of any determination by the EEOC. *See Dickerson v. Metropolitan Dade County*, 659 F.2d 574, 579 (5th Cir. 1981). Any action or failure to act by the EEOC is irrelevant to the determination of the jury in this case. By the enactment of Title VII, Congress neither explicitly nor implicitly provided for any action against the EEOC for negligence or dissatisfaction in its

14

**PLAINTIFF'S OBJECTION TO EXHIBITS, MOTION IN LIMINE
AND BRIEF IN SUPPORT THEREOF**

investigations. The EEOC's function is investigative.

Further, even if this Court were presented some evidence upon which to determine that the EEOC did not meet its burden by failing to properly conciliate, the appropriate remedy would only be an order to stay the proceedings to give the parties an opportunity to conciliate. *See EEOC v. Klingler Electric Corp.*, 636 F.2d 104, 107 (5th Cir. 1981). A stay of proceedings, however, would not be necessary or useful in this particular case, because pursuant to the Court's order and requirements, the parties have discussed settlement on several occasions since the filing of the action. In a Joint Settlement Report filed with this Court before the pretrial conference, the parties agree that further efforts to resolve the case through settlement would be futile.

## Issue No. 10
## UNIDENTIFIED OR IMPROPERLY
## IDENTIFIED WITNESSES OR TESTIMONY

The EEOC requests that this Court exclude from the trial of this matter any evidence or testimony, deposition or otherwise, or calling to the stand by the Defendant as a fact witness, any person other than the individuals who have been properly identified by the Defendant in the Witness List and in response to discovery answers filed in this case. The EEOC would be prejudiced and surprised by the admission of testimony from any witnesses not already named by the Defendant. The purpose of discovery and depositions is to provide each party with an opportunity to learn the testimony expected at trial. The EEOC did not have the benefit of deposing any witness not properly identified by the Defendant.

## Issue No. 11
## FARAGHER/ELLERTH AFFIRMATIVE DEFENSES

The Court should exclude from the trial of this matter any testimony or exhibits proffered by the Defendant in an attempt to meet the affirmative defense set out by the U.S. Supreme Court in the cases of *Burlington Industries Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). This affirmative defense requires parties to establish two necessary elements: "(1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807. Although initially centered in the sexual harassment context, the affirmative defense has been extended to disability harassment situations like the one in this case

This affirmative defense is not available to the Defendant based upon the high level positions of harasser Wayne Gilbert as Director of Operations and Human Resources Manager and Owner Robert Suarez in the company. Mr. Gilbert and Mr. Suarez were Tammy Gitsham's "employer." Under Title VII, an "employer" is directly liable for its own harassment of employees. Section 703(a)(1) of Title VII, 42 U.S.C. Section 2000e-2(a)(1). Since the acts of a corporation (or restaurant) are acts of human beings, to say that the "corporation" has discriminated means that someone at the ownership level in the corporate hierarchy has discriminated. *Hunter v. Allis-Chamers Corp.*, 797 F.2d 1417, 1423 (7th Cir. 1986); *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir. 1987).

**PLAINTIFF'S MOTION IN LIMINE**

Under *Faragher* and *Ellerth, a*n employer is subject to vicarious liability for unlawful harassment if the harassment was committed by "a supervisor with immediate (or successively higher) authority over the employee." Thus, it is critical to determine whether the person who engaged in unlawful harassment had supervisory authority over the complainant. In this case, the main harasser was Wayne Gilbert, who served as Director of Operations and as Human Resources Manager. In the positions held by Mr. Gilbert, he set policy, including job descriptions and duties, and he directed the work of Tammy Gitsham. He had the authority to hire, fire and discipline employees in Ms. Gitsham's position of Area Supervisor. As Defendant's Exhibit 4 shows, Mr. Gilbert disciplined Ms. Gitsham during her employment with the Defendant.

The Supreme Court, in *Faragher* and *Ellerth*, reasoned that vicarious liability for supervisor harassment is appropriate because supervisors are aided in such misconduct by the authority that the employers delegated to them. Therefore, that authority must be of a sufficient magnitude so as to assist the harasser explicitly or implicitly in carrying out the harassment. The determination as to whether a harasser had such authority is based on his or her job function rather than job title and must be based on the specific facts. An individual qualifies as an employee's "supervisor" if: (a) the individual has authority to undertake or recommend tangible employment decisions affecting the employee; *or* (b) the individual has authority to direct the employee's daily work activities. In this case, Mr. Gilbert had both.

Further, Ms. Gitsham complained of harassment by Robert Suarez who is the Owner of the franchise, and a high-level officer of BobRich Enterprises. His participation also is sufficient

**PLAINTIFF'S MOTION IN LIMINE**                                                                                                      17

to hold BobRich Enterprises liable for the disability harassment Tammy Gitsham suffered while working for the company. An owner, proprietor, partner corporate officer or supervisor "holding a sufficiently high position in the management heirarchy" may be treated as a corporation's proxy. *Faragher,* 524 U.S. 807. Under *Faragher* and *Ellerth*, the affirmative defense is not available for the Defendant because of the high level positions occupied by Mr. Gilbert and Mr. Suarez. EEOC requests that this Court exclude evidence, testimony and argument relating to the affirmative defense because it is unavailable to the Defendant under the facts of this case.

## CONCLUSION

WHEREFORE, premises considered, the EEOC respectfully requests that this Court grant the EEOC's Motion in Limine and order that no mention be made of the matters identified in Issues Numbered 1-11 above. EEOC further requests that this Court find that Defendant's Exhibits 2, 3, 10-12, 15 and 21 are inadmissible in the trial of this matter. EEOC requests that Defendant's Exhibits 20 and 23 be modified as requested above before being admitted into evidence. EEOC seeks such other and further relief to which it may be entitled.

Respectfully Submitted:

RONALD COOPER
General Counsel

GWENDOLYN Y. REAMS
Associate General Counsel

ROBERT A. CANINO
Regional Attorney
Oklahoma Bar No. 011782


/s/ Suzanne M. Anderson
SUZANNE M. ANDERSON
Supervisory Trial Attorney

Texas Bar No. 14009470

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
207 S. Houston Street
Dallas, Texas 75202
(214) 253-2740
(214) 253-2749 Fax
suzanne.anderson@eeoc.gov

## CERTIFICATE OF SERVICE

This is to certify that on this, the      26th      day of March 2007, I electronically transmitted the attached document to the Clerk of the Court using the ECF system of filing, which will transmit a Notice of the Electronic Filing to Defendant's counsel, an ECF registrant.

/s/ Suzanne M. Anderson
SUZANNE M. ANDERSON