

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:05-CV-1928-M |
| | § | |
| BOBRICH ENTERPRISES d/b/a<br>SUBWAY, | § | |
| | § | |
| Defendant. | § | |

## COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

### GENERAL INSTRUCTIONS

You have heard the evidence in this case. I will now instruct you on the law that you

must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury

are the judges of the facts. Do not consider any statement that I have made in the course of trial

or make in these instructions as an indication that I have any opinion about the facts of this case.

You are not to single out any one instruction alone as stating the law but must consider

the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law

stated by me. Regardless of any opinion you have as to what the law is or ought to be, it would

be a violation of your sworn duty to base a verdict upon any view of the law other than that given

in the instructions of the Court, just as it would be a violation of your sworn duty, as judges of

the facts, to base a verdict upon anything other than the evidence in this case.

You will soon hear the closing arguments of the attorneys. Statements and arguments of

the attorneys are not evidence and are not instructions on the law. They are intended only to

assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

Throughout these instructions, when I refer to "persons," that includes corporations. Corporations and individuals are treated the same under the law applicable to this case. Additionally, I may refer to the Equal Employment Opportunity Commission as the "Plaintiff" or the "EEOC," and to Bobrich Enterprises d/b/a Subway as the "Defendant" or "Bobrich Enterprises."

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. On all questions, the EEOC has the burden of proof.

You are the sole judges of the credibility or believability of each witness and the weight to be given to his or her testimony. In weighing the testimony of a witness, you should consider his or her relationship to the Plaintiff or the Defendant; his or her interest, if any, in the outcome of the case; his or her manner of testifying; his or her candor, fairness and intelligence; his or her opportunity to observe or acquire knowledge concerning the facts; and whether his or her testimony has been supported or contradicted by other credible evidence. You may accept or

reject the testimony of any witness in whole or in part.

A witness may be "impeached," or discredited, by a showing that the witness testified falsely concerning some important fact, or by evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial. You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction

between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—an expert witness—is permitted to state an opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

You will recall that during the course of this trial I instructed you that I admitted certain testimony and certain exhibits for a limited purpose. You may consider such testimony and exhibits as evidence only for the specific limited purposes for which it was admitted.

In deciding the facts of this case, you must not be swayed by bias, prejudice, or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. The parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences. All persons stand equal before the law and are to be dealt with as equals in a court of justice.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

## SPECIFIC INSTRUCTIONS

The Equal Employment Opportunity Commission is an agency of the United States. The EEOC is bringing this lawsuit on behalf of Tammy Gitsham, under the Americans with Disabilities Act of 1990, often called the "ADA." The ADA makes it unlawful for any employer to discriminate against a "qualified individual" with a "disability" because of his or her "disability," with respect to job application procedures, hiring, employee compensation, or any other term, condition, and privilege of employment.

In this case, the EEOC complains that Tammy Gitsham was discriminated against because of a hearing impairment. Specifically, the EEOC complains that Bobrich Enterprises subjected Tammy Gitsham to a hostile work environment where she was harassed (1) because she is disabled, and/or (2) because Bobrich Enterprises regarded Ms. Gitsham as being disabled. The EEOC complains that the harassment was so severe that it resulted in Ms. Gitsham's constructive discharge from the position of Area Supervisor.

Bobrich Enterprises denies Ms. Gitsham's claims and contends that she was not harassed, did not complain of being harassed, quit her employment with Bobrich Enterprises for unrelated reasons, and was not constructively discharged.

Bobrich Enterprises is a corporation, and a corporation may act only through natural persons as its agents or employees. In general, agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation, or within the scope of their duties as employees of that corporation.

As the Charge continues, certain items are in quotation marks, which means that they are

defined below.

Under the ADA, a "disability" is defined as: (a) a physical or mental "impairment" that "substantially limits" one or more of the "major life activities"; (b) having a "record of such an impairment"; or (c) being "regarded as having such an impairment." This case involves (a) and (c), which are listed in the alternative. In other words, if Tammy Gitsham meets definitions (a) or (c), she falls within the definition of "disability" for the purposes of the EEOC's claims.

The term "impairment" includes any physiological disorder, condition, or anatomical loss affecting one or more body systems, including sensory and speech organs.

A person is "substantially limited" in a major life activity if she is:

(1)     unable to perform the activity; or

(2)     significantly restricted in the condition, manner, or duration under which she can perform the activity as compared to the average person in the general population.

The following factors should be considered in determining whether an individual is "substantially limited" in a major life activity: (a) the nature and severity of the impairment; (b) the duration or expected duration of the impairment; and (c) the permanent or long-term impact of, or resulting from, the impairment. If a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is "substantially limited" in a major life activity. Depending on the facts of the case, mitigating measures can include things such as medicines or corrective devices, such as hearing aids, eyeglasses, or contact lenses, but do not include compensation strategies that do not actually improve the ability to perform a particular major life activity. For example, use of a wheelchair may improve a person's mobility without

improving a person's ability to walk.  In contrast, corrective eyewear may, in certain cases, fully remedy a visual impairment's effect on the ability of the impaired to perform the major life activity of seeing.  Restated, the use or non-use of a corrective device does not determine whether an individual is disabled.  Rather, the determination of whether one has a disability under the first statutory definition of "disability" is based on whether, notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity.  In other words, the question is whether a person using a corrective device is still substantially limited in a major life activity while using the device.

A "major life activity" is an activity that is important or significant, but it does not necessarily have to be public, economic, or undertaken daily.  Major life activities are those basic activities that the average person in the general population can perform with little or no difficulty, and they include, but are not limited to, such things as caring for oneself, performing manual tasks that are central to daily life, walking, seeing, hearing, speaking, breathing, learning, working, eating, lifting, reaching, sitting, standing, and reproducing.

A person is "regarded as having such an impairment" if she (1) has a physical or mental impairment that does not substantially limit a major life activity, but is treated as having a substantially limiting impairment by the defendant; or (2) has a physical or mental impairment that substantially limits one or more major life activities, but only because of the attitudes of others toward the impairment; or (3) has no actual impairment at all, but is treated by the defendant as having a substantially limiting impairment.

A "qualified individual" with a disability is defined as an individual with a disability who, with or without a reasonable accommodation, can perform the "essential functions" of the

job.

"Essential functions" are those that are fundamental to the job at issue. The term does not include the marginal functions of a job.

The EEOC claims that Tammy Gitsham was subjected to harassment by Bobrich Enterprises because she is disabled, and/or because she is regarded as disabled. It is unlawful for an employer to discriminate against an employee because of the employee's disability. This includes disability harassment. For Bobrich Enterprises to be liable for disability harassment, the conduct must have been sufficiently severe or pervasive to alter the terms or conditions of Ms. Gitsham's employment and to create a hostile or abusive work environment.

To determine whether the conduct and comments in this case rise to a level that alters the terms or conditions of Ms. Gitsham's employment, you should consider all the circumstances. Specifically, you should consider factors such as: the nature of the comments or conduct, whether the harassment was verbal or physical; the frequency and severity of the comments or conduct; whether the comments or conduct were physically threatening or humiliating, in contrast to mere offensive utterances; the context in which the comments or conduct occurred; and whether the comments or conduct unreasonably interfered with the employee's work performance. No single factor is required, but any of these factors may be taken into consideration.

In determining whether a hostile work environment existed, you must consider the evidence from both Tammy Gitsham's perspective and from the perspective of a reasonable person. First, Ms. Gitsham must actually have found the conduct offensive. Next, you must look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly

sensitive person; nor can you view the evidence from the perspective of someone who is never

offended. Rather the allegedly harassing behavior must be such that a reasonable person in the

same or similar circumstances of Ms. Gitsham would find the conduct offensive.

If the EEOC proves that Ms. Gitsham was disabled and was harassed by Wayne Gilbert

because of her disability, then you must decide whether Bobrich Enterprises is liable for Mr.

Gilbert's conduct or comments. To be liable for the comments or conduct of Mr. Gilbert, the

EEOC must prove (a) that Bobrich Enterprises either knew of the harassment or, in the exercise

of reasonable care, should have known of the harassment, and (b) that Bobrich Enterprises failed

to take prompt remedial action.

In determining whether Bobrich Enterprises knew or should have known of the

harassment, the EEOC must prove (a) that any harassment by Mr. Gilbert was known or

communicated to a person who had the authority to receive, address, or report the complaint,

even if that person did not do so, or (b) that the harassment was so open and obvious that Bobrich

Enterprises should have known about it.

Comments or conduct relating to an employee's disability which are abusive, humiliating,

or threatening are discriminatory if the conduct pollutes an employee's workplace and makes it

more difficult for the employee to do her job, to take pride in her work, or to desire to stay in her

position. Although the existence of physical or psychological injury supports a finding of an

"abusive or hostile environment," it is not necessary for the employee to suffer physical or

psychological injury for harassment to create an abusive or hostile environment.

In certain circumstances, even a single, severe act of harassment can be sufficient to

create a hostile work environment. There is no numerical standard as to the number of acts of

harassment that must be committed before you, as a jury, may reasonably find that a hostile environment exists. The more severe the conduct, however, the less pervasive or repetitive the conduct must be to find a hostile work environment.

The EEOC complains that Tammy Gitsham was constructively discharged from her position as Area Supervisor because of continued disability harassment by Bobrich Enterprises. In order for you to find a "constructive discharge," the EEOC must prove by a preponderance of the evidence that Bobrich Enterprises, by its illegal discriminatory acts, made Tammy Gitsham's working conditions so difficult that a reasonable person in her position would have felt compelled to resign; in other words, that the abusive working environment became so intolerable that her resignation qualified as a fitting response. In certain circumstances, even a single incident of disability harassment may be enough to find constructive discharge if the incident was severe enough. The EEOC is not required to prove that Bobrich Enterprises consciously intended to force Tammy Gitsham to resign. Rather, an employer is held to have intended those consequences it could have reasonably foreseen.

As with all findings and conclusions you reach, your ultimate finding of whether Tammy Gitsham was constructively discharged must be based upon the evidence you have heard and seen in this trial.

If you find by a preponderance of the evidence that Bobrich Enterprises constructively discharged Tammy Gitsham because of her disability, in violation of the Americans with Disabilities Act, then you must determine what sum of money she is entitled to receive as backpay.

Backpay is calculated as the difference between what Tammy Gitsham would have earned

had she not been constructively discharged and what she has earned at other jobs from June 10, 2003 until no later than March 31, 2004. Basically, you have the ability to make Tammy Gitsham whole for any wages or other benefits that she has lost as a result of the alleged discrimination.

You are not required to calculate backpay with mathematic certainty. You may make an estimate of the amount of money that will constitute just and reasonable compensation based on the facts that are before you.

If you find that Bobrich Enterprises took adverse employment action against Tammy Gitsham because of her disability, by subjecting her to a hostile work environment, then you must determine an amount that is fair compensation for her damages. These damages are called compensatory damages. The purpose of compensatory damages is to make Tammy Gitsham whole—that is, to compensate her for the damages, if any, which she has suffered and/or will, in all reasonable probability, suffer in the future, as a consequence of Bobrich Enterprises' allegedly illegal conduct.

The EEOC has claimed that as a result of Bobrich Enterprises' unlawful treatment of Tammy Gitsham, she has suffered from embarrassment, humiliation, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other mental and emotional pain. Emotional harm may manifest itself, for example, as sleeplessness, anxiety, stress, depression, humiliation, emotional distress, or loss of self esteem. The EEOC is not seeking damages for psychic injury or psychiatric disorder.

If you find that the EEOC has proven by a preponderance of the evidence that Tammy Gitsham has suffered mental or emotional distress because of unlawful treatment by Bobrich

Enterprises, then you must determine an amount that is fair compensation for her damages. No

evidence of monetary value of such intangible things, such as emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other mental and emotional pain

must be introduced into evidence. No exact standard exists for fixing the compensation to be

awarded for these elements of damages. The damages that you award must be fair

compensation—no more and no less. The award you make should be fair in light of the

evidence.

Computing this award may be difficult, but you must not let that difficulty lead you to

engage in arbitrary guesswork. On the other hand, the law does not require Tammy Gitsham to

prove the amount of her losses with mathematical precision, but only with as much accuracy as

the circumstances permit.

If you find that Bobrich Enterprises took adverse employment action against Tammy

Gitsham because of her disability, by subjecting her to a hostile work environment, resulting in

her constructive discharge, you must also determine by a preponderance of the evidence whether

one or more of Bobrich Enterprises' acts was done with malice or with reckless indifference to

the federally protected rights of Tammy Gitsham. The terms "malice" and "reckless

indifference" pertain to Bobrich Enterprises' knowledge that it may be acting in violation of

federal law. Malicious conduct is the intentional doing of a wrongful act with knowledge that the

act was wrongful. Reckless indifference is when an act is done with a lack of concern for the

consequences of the action. To conclude that Bobrich Enterprises acted with malice or reckless

indifference toward Tammy Gitsham's federally protected rights by subjecting her to

discrimination, you must conclude that Bobrich Enterprises had knowledge that it may be acting

in violation of federal law, or that it was aware of the risk that its actions violated federal law.

You will not be asked whether the conduct at issue was "egregious" or "outrageous."

## QUESTION I

Do you find by a preponderance of the evidence that Tammy Gitsham suffered from a "disability" while she was employed by Bobrich Enterprises, in that she (a) had a physical or mental impairment that substantially limited one or more major life activities, or (b) was regarded as having such an impairment?

*Answer "yes" or "no":* ___Yes___ .

*If you answered "yes" to Question I, proceed to Question II. Otherwise, do not answer any of the following questions.*

## QUESTION II

Do you find by a preponderance of the evidence that Robert Suarez and/or Wayne Gilbert subjected Tammy Gitsham to a hostile work environment because she (a) is disabled, or (b) is regarded as disabled?

*Answer "yes" or "no":*  __Yes__ .

*If you answered "no" to Question II, do not answer any of the following questions.  If you answered "yes" to Question II based on comments or conduct of only Mr. Gilbert, then answer Question III; otherwise, proceed to Question V.*

## QUESTION III

Do you find by a preponderance of the evidence that Bobrich Enterprises knew or, in the exercise of reasonable care, should have known that Tammy Gitsham was being harassed because of her disability by Mr. Gilbert?

*Answer "yes" or "no" :* _____.

*If you answered "yes" to Question III, proceed to Question IV. Otherwise, proceed to Question V.*

## QUESTION IV

Do you find by a preponderance of the evidence that Bobrich Enterprises failed to take prompt remedial action in response to the harassment of Tammy Gitsham, that you have previously found was because of her disability?

*Answer "yes" or "no":* _____ .

*Proceed to Question V.*

### QUESTION V

Do you find by a preponderance of the evidence that Bobrich Enterprises constructively discharged Tammy Gitsham from her position as Area Supervisor?

*Answer "yes" or "no":* __Yes__.

*If you answered "yes" to Question V, proceed to Question VI.  Otherwise proceed to Question VII.*

## QUESTION VI

What amount of backpay damages, if any, should be assessed against Bobrich Enterprises for the actions you found to be the basis of your responses to the previous questions?

*Answer in dollars and cents:*  $16,500.00

*Proceed to Question VII.*

## QUESTION VII

What amount of compensatory damages, if any, should be assessed against Bobrich Enterprises for the actions you found to be the basis of your response to Question II?

*Answer in dollars and cents:* $50,000.00

*Proceed to Question VIII.*

### QUESTION VIII

Do you find by a preponderance of the evidence that Bobrich Enterprises acted with malice or with reckless indifference to the rights of Tammy Gitsham to be protected from discrimination on the basis of her disability?

*Answer "yes" or "no":*  Yes .

## POST-ARGUMENT INSTRUCTIONS

You are the sole and exclusive judges of the facts. You should determine these facts without any bias, prejudice, sympathy, fear, or favor, and this determination should be made from a fair consideration of all the evidence that you have seen and heard in this trial. Do not speculate on matters that are not in evidence. Keep constantly in mind that it would be a violation of your own sworn duty to base a verdict on anything but the evidence in this case. You will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

The fact that I have given you instructions about a particular claim or defense, or that I have not so instructed you, should not be interpreted by you in any way as an indication that I believe a particular party should, or should not, prevail in this case. It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

You will now retire to the jury room. In a few minutes I will send you this Charge and the exhibits the Court has admitted into evidence. Upon receiving the exhibits and Charge, you should select a Foreperson and commence deliberations. Do not deliberate unless all of you are present in the jury room. In other words, if one or more of you go to lunch together or are

together outside the jury room, do not discuss the case.

After you have reached your verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form. Unless I direct you otherwise, do not reveal your answer until such time as you are discharged.

During your deliberations you will set your own work schedule, deciding for yourselves when and how frequently you wish to recess and for how long. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

If during the course of your deliberations you wish to communicate with the Court, you should do so only in writing by a note signed by the Foreperson and given to the Court Security Officer. I will then respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question. I caution you, however, with respect to any message or question you might send, that you should never state or specify your numerical division at any time unless I specifically instruct you.

After you have reached your verdict, you will return this Charge together with your written answers to the questions. Do not reveal your answers to anyone besides other members of the jury until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question, unless I specifically instruct you otherwise. Depending on your answers, the Court may submit additional questions before you are discharged.

Your Foreperson will sign in the space provided below after you have reached your verdict.

July 26, 2007.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

3:05-CV-1928-M

## VERDICT OF THE JURY

We, the jury, have answered the above and foregoing questions as indicated, and herewith return the same to the Court as our verdict.

July 27, 2007.

**REDACTED**

FOREPERSON

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 27 2007

CLERK, U.S. DISTRICT COURT
By _____
Deputy